# NO. 12-18-00317-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *ROBBINS RANCH SUBDIVISION HOMEOWNERS' ASSOCIATION AND WILLIAM A. RHYNE, ET UX, INDIVIDUALLY, APPELLANTS* | *§* | *APPEAL FROM THE* |
| *V.* | *§* | *COUNTY COURT AT LAW NO. 2* |
| *PARTNERS OF BENCHMARK PROPERTIES, L.P., ET AL, APPELLEES* | *§* | *GREGG COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Robbins Ranch Subdivision Homeowner's Association (Robbins Ranch) and William Rhyne, et ux, Individually (Rhyne) appeal the trial court's grant of a directed verdict in favor of Partners of Benchmark Properties, L.P. (Benchmark). We affirm.

## BACKGROUND

Benchmark is the developer of the Robbins Ranch Subdivision, Phase 2, in Gregg County, Texas. Benchmark is a limited partnership. The general partner is Benchmark Properties, L.C., and the limited partners are Henry Boswell, III and Robert Farrell. Boswell and Farrell are also members of Farrell and Boswell Realty, L.C. (Farrell and Boswell Realty), a real estate firm. In that capacity, Boswell and Farrell each hold broker's real estate licenses.

Rhyne and his wife purchased a lot in the subdivision from Benchmark. The unimproved property contract lists Rhyne and his wife as the purchasers and Benchmark as the seller. It also identifies Farrell and Boswell Realty as the seller's real estate broker. The contract states that membership in the property owner's association is mandatory and the buyer agrees to be bound by

the Declaration of Restrictions, Covenants, and Conditions. Those Declarations state that the private road shown on the subdivision plat shall be owned and maintained by Robbins Ranch.

After Rhyne purchased the property, a dispute arose as to the condition of the private road. According to Robbins Ranch and Rhyne, the road is of "questionable standards" and the use of the road by oilfield vehicles has compromised the road's surface. They alleged that the road's condition impacted home values and the enjoyment of the subdivision by the members of Robbins Ranch. Benchmark contended that Robbins Ranch is responsible for maintaining the road. When an agreement could not be reached, Robbins Ranch and Rhyne sued Benchmark, Chinn Exploration, Inc., and Trivium Operating L.L.C. Their petition included causes of action for fraud by non-disclosure, breach of formal and/or informal fiduciary relationship, breach of implied warranty, and violations of the Deceptive Trade Practices Act (DTPA) against Benchmark. They also alleged Chinn was liable for breach of contract and nuisance and that Trivium was liable for nuisance. Prior to trial, Chinn obtained a summary judgment dismissing the breach of contract claim. Robbins Ranch and Rhyne withdrew the causes of action for fraud by non-disclosure and breach of implied warranty.

At trial, following the presentation of evidence, the trial court granted a directed verdict on the fiduciary duty and nuisance causes of action. The jury found in favor of Benchmark on the DTPA claim, and the trial court entered judgment in accordance with the jury's verdict.[1] This appeal followed.

<u>**DIRECTED VERDICT**</u>

In their sole issue, Robbins Ranch and Rhyne contend the trial court erred when it granted Benchmark's motion for directed verdict. Specifically, they argue legally sufficient evidence was presented that Benchmark owed Robbins Ranch a formal or informal fiduciary duty.

**Standard of Review**

In reviewing the grant or denial of a directed verdict, an appellate court follows the standards for assessing the legal sufficiency of the evidence. ***Hunter v. PriceKubecka, PLLC***, 339 S.W.3d 795, 802 (Tex. App.—Dallas 2011, no pet.). This requires a determination of whether there

---

[1] Only the directed verdict in favor of Benchmark is currently before us. On March 12, 2019, this Court granted an agreed motion to dismiss the appeal with respect to Chinn and Trivium. *See **Robbins Ranch Subdivision Homeowner's Ass'n v. Partners of Benchmark Properties, L.P., et al.**, No. 12-18-00317-CV, 2019 WL 1141775 (Tex. App.—Tyler Mar. 12, 2019, no pet) (mem. op.). Accordingly, they are no longer parties to this appeal.

is any evidence of probative force to raise a fact issue on the question presented. *Id*. In reviewing the legal sufficiency of the evidence, we view the evidence in the light most favorable to the fact finding, crediting favorable evidence if reasonable persons could, and disregarding contrary evidence unless reasonable persons could not. *Id*. A directed verdict is proper if a party fails to present evidence raising a fact issue essential to the right of recovery or if the party either admits or the evidence conclusively establishes a defense to the cause of action. *Id*. A reviewing court may affirm a directed verdict even if the trial court's rationale for granting the directed verdict is erroneous, provided the directed verdict can be supported on another basis. *Id.*

## Applicable Law

A viable breach of fiduciary duty claim requires the following proof: (1) a fiduciary relationship between the plaintiff and the defendant, (2) a breach of the fiduciary duty to the plaintiff, and (3) injury to the plaintiff (or benefit to the defendant) as a result of the breach. *Flagstar Bank, FSB v. Walker*, 451 S.W.3d 490, 499 (Tex. App.—Dallas 2014, no pet.). At issue in this case is whether a fiduciary relationship existed between Benchmark and Robbins Ranch, including its members.

Texas courts are reluctant to recognize a fiduciary relationship because it requires a person to place someone else's interests above his own. *See Lindley v. McKnight*, 349 S.W.3d 113, 124 (Tex. App.—Fort Worth 2011, no pet.). The term "fiduciary" applies to any person who occupies a position of peculiar confidence towards another and can arise in formal and informal relationships. *See Lee v. Hasson*, 286 S.W.3d 1, 14 (Tex. App.—Houston [14th Dist.] 2007, pet. denied). A fiduciary relationship exists when "the parties are under a duty to act for or give advice for the benefit of another upon matters within the scope of the relationship." *Tex. Bank & Trust Co. v. Moore*, 595 S.W.2d 502, 507 (Tex. 1980). Fiduciary duties may arise from formal and informal relationships. Formal fiduciary relationships, such as attorney-client, partnership, and trust relationships, arise as a matter of law. *See Crim Truck & Tractor v. Navistar Int'l Transp. Corp.*, 823 S.W.2d 591, 594 (Tex. 1992), *superseded by statute on other grounds as noted in Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 225–26 (Tex. 2002). A real estate broker owes a fiduciary duty while acting on behalf of a client. 22 TEX. ADMIN. CODE § 531.1.

Informal fiduciary relationships, sometimes referred to as "confidential relationships," may give rise to a fiduciary duty where one person trusts in and relies on another, whether the relation

is a moral, social, domestic, or purely personal one. *See **Thigpen v. Locke**, 363 S.W.2d 247, 253 (Tex.1962); **Lee**, 286 S.W.3d at 14. An informal fiduciary relationship exists where influence has been acquired and abused, and confidence has been reposed and betrayed. **Prime Prods., Inc. v. S.S.I. Plastics, Inc.,** 97 S.W.3d 631, 638 (Tex. App.—Houston [1st Dist.] 2002, pet. denied). However, in the context of a business transaction, to impose an informal fiduciary duty, the special relationship of trust and confidence must exist prior to, and apart from, any agreement made the basis of the suit. **Meyer v. Cathey**, 167 S.W.3d 327, 331 (Tex. 2005). Courts do not create such relationships lightly. **Id.**; **Schlumberger Tech. Corp. v. Swanson,** 959 S.W.2d 171, 177 (Tex. 1997).

A party claiming the existence of an informal fiduciary relationship (confidential relationship) must have been accustomed to being guided by the judgment or advice of the other. **Thigpen**, 363 S.W.2d at 253; *see also **Lee**,* 286 S.W.3d at 14 (citations omitted). The existence of an informal fiduciary relationship is generally a question of fact. **Lee**, 286 S.W.3d at 14. But the issue is a question of law when the facts are undisputed or there is no evidence to show the existence of an informal fiduciary relationship. *See **Meyer**,* 167 S.W.3d at 330–31; **Trostle v. Trostle,** 77 S.W.3d 908, 914–15 (Tex. App.—Amarillo 2002, no pet.). To determine whether a fiduciary relationship exists, courts review the actualities of the relationship between the parties involved. *See **Thigpen**,* 363 S.W.2d at 253. Not every relationship involving a high degree of trust and confidence rises to the stature of a fiduciary relationship. **Meyer,** 167 S.W.3d at 330.

## Claims Through Real Estate Act

Robbins Ranch and Rhyne urge that because Boswell and Farrell did not keep their real estate company, Boswell and Farrell Realty, completely separate and apart from the development company, Benchmark, they owed the members of Robbins Ranch the same fiduciary duty as if they were acting as real estate agents.[2]

Barbara Tarin, who has over fifty years of real estate experience, testified as an expert at trial. According to Tarin,

> The defendants, Benchmark Partners, LP, the partners in that -- in that organization were Mr. Farrell
> … the two partners, that Farrell and Boswell also were a real estate organization that listed the

---

[2] Robbins Ranch and Rhyne did not allege theories of alter-ego, vicarious liability, or piercing the corporate veil.

development that they -- that is in question, Robbins Ranch. And they took -- the relationship was between a development entity and a real estate licensed organization or individuals.

. . .

The two licensees, Mr. Farrell and Mr. Boswell, as licensees, real estate licensees, have an obligation to act through the standards of the Texas Real Estate License Act, which is the Texas Occupations Code 1101.651. The fact that they were a development company, but they were also involved as two real estate licensees, bound them by those -- by that Occupations Code. They have certain duties under that code to clients that they deal with.

. . .

Basically, not to hold their personal interest above the interest of any client, whatever side of the transaction they're on. To treat all parties to a transaction truthfully and honestly, and to have full disclosure of anything that impacts the acquisition of a real estate asset that might affect someone's decision to purchase or not purchase a particular real estate asset.

When asked if Farrell and Boswell were relieved of their fiduciary duties as real estate agents because they had created a development company, Tarin responded:

No. If they had maintained total separation of duties and functions, it would be one thing, but Mr. Farrell and Mr. Boswell, along with Benchmark Partners, did not keep everything separate and apart. As licensees, they are not relieved from following the standards of the Texas Occupations Code.

On appeal, Robbins Ranch posits that Tarin's testimony is sufficient to defeat the motion for directed verdict. Benchmark urges that the trial court properly disregarded Tarin's testimony because it is incorrect and contrary to Texas law. Benchmark further urges that it owed no fiduciary duty to the members of Robbins Ranch because its partners did not act as a real estate agent for anyone other than themselves.

Rhyne's property contract listed Benchmark as the seller of the property and lists Farrell and Boswell Realty as the broker for the seller. This fact is insufficient to establish a formal or informal fiduciary relationship. Benchmark is not a real estate broker and Farrell and Boswell Realty did not represent Rhyne (or the other buyers). Consequently, no formal fiduciary relationship existed between Benchmark and Appellants. *See* 22 TEX. ADMIN. CODE § 531.1.

Furthermore, the record contains no evidence of a confidential relationship between the buyers and Benchmark. The extent of the relationship between Benchmark and Rhyne is that of buyer and seller. This is not the type of relationship in which one person trusts in and relied on another. *See* ***Thigpen***, 363 S.W.2d at 253. Nor is it the type of relationship in which influence

5

has been acquired and abused and confidence reposed and betrayed. *See **Prime Prods., Inc.***, 97 S.W.3d at 638. Furthermore, no evidence was admitted to make the requisite showing of a prior relationship of trust and confidence between Benchmark and Rhyne before Rhyne purchased his property in the subdivision. *See **Meyer***, 167 S.W.3d at 331. As a result, despite Tarin's testimony, no evidence of an informal fiduciary relationship via the Texas Real Estate Act was presented.

**Claim Through Covenants**

Robbins Ranch and Rhyne further allege that evidence was presented to demonstrate the creation of an informal fiduciary relationship through the covenants and restrictions.

Under the Declarations of Covenants, Conditions, and Restrictions, Benchmark retained control over Robbins Ranch until all lots of the development were sold to a first purchaser. The evidence showed that Benchmark purchased the land for the development of a subdivision. This included configuration and construction of roads in conjunction with Chinn. Chinn held an oil and gas lease and began drilling five wells on the property in accordance with that lease. Benchmark sold lots to purchasers, including Rhyne, who were members of Robbins Ranch. Farrell and Boswell Realty represented Benchmark in those transactions.

No evidence was presented at trial showing that Rhyne or any other purchaser had any dealings, connection, or relationship with Benchmark, Boswell, or Farrell prior to contacting Boswell and Farrell Realty concerning the purchase of lots in the subdivision. Nor was evidence introduced showing any dealings, connection, or relationship between Rhyne or any other purchaser and Benchmark as developer of the subdivision before they became members of Robbins Ranch. For an informal fiduciary duty to exist in a business transaction, the special relationship of trust and confidence must exist prior to, and apart from, any agreement made the basis of the suit. ***Meyer***, 167 S.W.3d at 331; ***Associated Indem. Corp. v. CAT Contracting, Inc.***, 964 S.W.2d 276, 288 (Tex. 1998); *see **Envtl. Procedures, Inc. v. Guidry***, 282 S.W.3d 602, 628 (Tex. App.—Houston [14th Dist.] 2009, pet. denied). Here, the evidence demonstrates that no such relationship existed apart from the contract. As a result, the evidence would not enable reasonable and fair-minded people to conclude that a confidential relationship existed between Robbins Ranch, Rhyne, and Benchmark prior to the transaction that is the subject of Robbins Ranch and Rhyne's claims.

**Conclusion**

Based on the foregoing, we hold that no formal or informal fiduciary duty existed between Benchmark and the members of Robbins Ranch and Rhyne as a matter of law. *See **Meyer***, 167

S.W.3d at 330–31.  Because the trial court properly granted a directed verdict in favor of Benchmark on breach of fiduciary duty, Robbins Ranch's and Rhyne's sole issue is overruled.

## DISPOSITION

Having overruled Robbins Ranch's and Rhyne's sole issue, we *affirm* the judgment of the trial court.

**BRIAN HOYLE**
Justice

Opinion delivered May 15, 2019.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(PUBLISH)

7



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**MAY 15, 2019**

**NO. 12-18-00317-CV**

**ROBBINS RANCH SUBDIVISION HOMEOWNERS' ASSOCIATION
AND WILLIAM A. RHYNE, ET UX, INDIVIDUALLY,**
Appellants
V.
**PARTNERS OF BENCHMARK PROPERTIES, L.P., ET AL,**
Appellees

Appeal from the County Court at Law No. 2
of Gregg County, Texas (Tr.Ct.No. 2015-251-CCL2)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that all costs of this appeal are hereby adjudged against the Appellants, **ROBBINS RANCH SUBDIVISION HOMEOWNERS' ASSOCIATION AND WILLIAM A. RHYNE, ET UX, INDIVIDUALLY,** for which execution may issue, and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*