**Opinion issued December 31, 2025**



In The

# Court of Appeals

For The

# First District of Texas

———————————

**NO. 01-24-00391-CV**

———————————

**TAMMY TRAN, MINH-TAM, ATTORNEY AT LAW, LLP AND HONG-AN, LP, Appellants**

**V.**

**2905 FANNIN, LLC, Appellee**

---

**On Appeal from the 61st District Court**
**Harris County, Texas**
**Trial Court Case No. 2023-17402**

---

## MEMORANDUM OPINION

Hong-An, LP bought commercial real property in Houston, Texas by taking a $2.8 million mortgage secured by a first lien on the property. Later, Hong-An twice borrowed money ($400,000 and $283,000), securing those additional loans with second and third liens on the same property. The second and third loans were

transferred to 2905 Fannin, LLC ("2905 Fannin"), which sued Hong-An, and guarantors (and appellants) Tammy Tran and her law firm (Minh-Tran "Tammy" Tran, Attorney at Law, LLP also known as the "Tran Law Firm") for breach of contract. After the parties signed a settlement agreement in that case, but before the trial court entered judgment dismissing it with prejudice, the first lien holder foreclosed on the property. 2905 Fannin sued the appellants for breach of the settlement agreement for allowing the superior lien holder to foreclose on the property, and it later added a claim for breach of contract—an alternative theory of liability—based on the appellants' failure to make a payment in accordance with the schedule in the settlement agreement.

The trial court granted summary judgment in favor of 2905 Fannin based on both alleged breaches. The appellants challenge that ruling on appeal, asserting that both of 2905 Fannin's alternative liability theories fail. First, they argue that 2905 Fannin's breach of contract claim based on the foreclosure is barred by res judicata because, through the exercise of diligence, 2905 Fannin could have raised that claim in the prior lawsuit. Second, they argue that 2905 Fannin breached the settlement agreement first by filing suit, and that breach excused their nonpayment of amounts owed pursuant to the settlement agreement.

2

We conclude that 2905 Fannin did not breach the settlement agreement by filing suit, and the trial court did not err by granting summary judgment based on the appellants' default.[1] We affirm the judgment of the trial court.

## Background

### I. Hong-An, LP buys property in Harris County, Texas and obtains two additional loans secured by an interest in the property.

In 2012, Hong-An, LP purchased commercial real property located at 2905-2915 Fannin Street in Harris County Texas for $2.8 million from R.A. Lane, Jr. with a mortgage from The Bank of River Oaks. PlainsCapital Bank later succeeded the Bank of River Oaks as the holder of the mortgage.

In January 2013, Hong-An took the first of two loans from Icon Bank.[2] The first loan, for the principal amount of $400,000, was memorialized in a promissory note ("Note One"), secured by second lien deed of trust on the property at 2905-2915 Fannin, and guaranteed by both Tran individually and the Tran Law Firm. Nearly three years later, in December 2015, Hong-An took a second loan from

---

[1] Because the summary judgment can be upheld based on breach of the payment schedule in settlement agreement, we do not need to consider the arguments that the other allegation of breach of contract is barred by res judicata. *See* TEX. R. APP. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal.")

[2] Icon Bank was succeeded by merger with Bancorp South, which assigned both notes along with their security instruments and guaranty agreements to Nicholas Williams Associates, LLC, which later assigned them to 2905 Fannin.

Icon Bank. The second loan, for the principal amount of $283,000, was memorialized in a promissory note ("Note Two"), secured by third lien deed of trust on the property at 2905-2915 Fannin, and guaranteed by both Tran individually and the Tran Law Firm.

Both Notes One and Two included a provision that allowed the "Payee" the option to accelerate the note after a missed payment.[3] Both the Second and Third Lien Deeds of Trust provided: "Grantors will not suffer or permit any lien superior or equal to the lien created hereby to attach to or be enforced against the Premises."

## II. 2905 Fannin sues for breach of contract, and the suit is resolved by settlement amid foreclosure proceedings by PlainsCapital Bank.

### A. 2905 Fannin settles its breach of contract claims relating to Notes One and Two.

In 2021, 2905 Fannin sued Hong-An, its general partner Chua, LLC, Tran, and the Tran Law Firm for default under the terms of Notes One and Two. Hong-An, Chua, Tran, and the Tran Law firm filed a counterclaim. The parties resolved their claims and signed a settlement agreement on February 3, 2023, which

---

[3] "IF ANY installment or payment of principal or interest of this note is not paid within (10) days of its due date; or if default occurs under any document, instrument or agreement executed in connection with or as security for this note . . . and such default remains uncured for at least thirty (30) days . . . . thereupon, at the option of Payee, this note and any and all other indebtedness of Maker to Payee will become due and payable forthwith without demand, notice of default, notice of intent to accelerate the maturity of this note, notice of acceleration of the maturity of this note, notice of nonpayment, presentment, protest or notice of dishonor, all of which are expressly waived by Maker and each other liable party."

included mutual releases, but it expressly provided that they "[did] not release any obligations recognized or created by this Agreement or [Note One], [Note Two], [the Personal Guarantees], and/or any and all modifications, renewals, and/or re-arrangements thereof."

The parties also signed Second and Third Lien Modification, Renewal, and Extension Agreements, which were incorporated by reference into the settlement agreement and extended the maturity dates of Notes One and Two to December 31, 2025. Each agreement required a payment on August 12, 2023: $16,733.36 and $826.64[4] for Notes One and Two, respectively. Each modification agreement incorporated by reference the obligations and liabilities under Notes One and Two and the Second and Third Lien Deeds of Trust.[5]

---

[4] The Modification, Renewal, and Extension Agreements included specific repayment schedules with dates and amounts owed.

[5] Paragraph 4(a) of the Second Lien Modification, Renewal, and Extension Agreement provided:

4. Borrower understands and agrees that:

(a) All covenants, agreements, stipulations, and conditions in the Second Lien Promissory Note and Second Lien Deed of Trust shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities shall be diminished or released by any provisions hereof. Nor shall this Modification Agreement in any way impair, diminish, or affect any of Note Holder's rights under or remedies available under the Second Lien Promissory Note and Second Lien Deed of Trust, whether such rights or remedies arise thereunder or by operation of law. Also, this

The parties filed a motion to dismiss on February 13, 2023, and the trial court dismissed the case with prejudice the next day, February 14, 2023.

**B.      Contemporaneously, PlainsCapital Bank, the first lien holder, foreclosed based on default.**

Two cases proceeded simultaneously: the case filed by 2905 Fannin and a suit brought by PlainsCapital Bank against Hong-An for default on the first mortgage. In May 2022, Hong-An entered into a settlement agreement with PlainsCapital Bank, which provided for monthly payments with a final balloon payment on December 1, 2022, and permitted the bank to foreclose without further notice upon default.

---

> Modification Agreement does not impair, in any way, any Personal Guaranty.

Similarly, Paragraph 4(a) of the Third Lien Modification, Renewal, and Extension Agreement provided:

> 4.      Borrower understands and agrees that:
>
> (a)      All covenants, agreements, stipulations, and conditions in the Third Lien Promissory Note and Third Lien Deed of Trust shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities shall be diminished or released by any provisions hereof. Nor shall this Modification Agreement in any way impair, diminish, or affect any of Note Holder's rights under or remedies available under the Third Lien Promissory Note and Third Lien Deed of Trust, whether such rights or remedies arise thereunder or by operation of law. Also, this Modification Agreement does not impair, in any way, any Personal Guaranty.

6

On January 13, 2023, PlainsCapital Bank publicly posted and mailed to Hong-An and Tran a "Notice of Substitute Trustee Sale" asserting that Hong-An defaulted and that the property would be sold at a public auction. On February 7, 2023, PlainsCapital Bank bought the property at auction for $975,623.00.

**III.   2905 Fannin sues for breach of the Settlement Agreement and prevails on summary judgment.**

Although PlainsCapital Bank foreclosed on the property a week before the trial court dismissed the prior case, 2905 Fannin did not amend its petition. Instead, just over a month later, on March 17, 2023, 2905 Fannin filed a second lawsuit against Hong-An, Tran, and the Tran Law Firm. Initially, 2905 Fannin alleged that the appellants breached the parties' contract by allowing the superior lien holder to foreclose on the property. On August 22, 2023, ten days after payments were due pursuant to the settlement agreement's payment schedule, 2905 Fannin added a second, alternative, breach of contract claim based on the appellants' default on installment payments due August 12, 2023, as required by the settlement agreement.

About two months later, 2905 Fannin moved for traditional summary judgment on its breach of contract claims arguing that the foreclosure on the property violated provisions of Notes One and Two and provisions of the second and third lien deeds of trust. It also argued that the appellants defaulted on the settlement agreement by failing to make scheduled payments beginning on August

7

12, 2023.[6] The appellants maintained that the breach of contract claim based on foreclosure was barred by res judicata because it could have been raised in the prior lawsuit. As to the breach of contract claim based on default, the appellants argued that 2905 Fannin breached the contracts first by filing suit for breach of contract.

Although 2905 Fannin argued that its claims in this case were different from its claims in the prior suit and arose after the settlement agreement was signed, appellants argued, among other things: "Plaintiff cannot breach the settlement agreement by suing Defendants on March 17, 2023, then demanding Defendants to pay Plaintiff on August 12, 2023. The law certainly does not allow Plaintiff to have [it] both ways. As such, due to Plaintiff's breach, the required payments were justifiably excused."

On March 4, 2024, the trial court signed a final summary judgment holding that the appellants breached by allowing PlainsCapital Bank to foreclose on the property and by failing to make payments required to be made by August 12, 2023. The court awarded actual damages of $798,482.33 plus $9,352.12 in trial attorney's fees and $266 in costs of court. After the trial court denied the appellants' motion for a new trial, this appeal followed.

---

[6] Because the measure of damages was the same for both claims and 2905 Fannin was entitled to just one recovery, 2905 Fannin only needed to prevail on one of the two alternative theories to be entitled to summary judgment.

**Analysis**

The appellants challenge the summary judgment on two grounds. First, they argue that 2905 Fannin's claims are barred by res judicata because they arose from the same legal relationship based on Notes One and Two and before the final judgment in the prior lawsuit. Second, they argue that genuine issues of material fact preclude summary judgment because they "vigorously protested the foreclosure" and 2905 Fannin breached the agreement first.

The breach of contract claim based on failure to make scheduled payments as per the settlement agreement undisputedly arose only after the final judgment in the prior lawsuit. Therefore, regardless of whether 2905 Fannin's other claims were barred by res judicata, this claim would still stand. We affirm the district court's grant of summary judgment based on appellant's default on the settlement agreement.

## I.    We review summary-judgment rulings de novo.

We review summary judgment rulings de novo. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). A party moving for traditional summary judgment must show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *see Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003).

"An affirmative defense prevents the granting of a summary judgment only if each element of the affirmative defense is supported by summary judgment evidence." *Fortitude Energy, LLC v. Sooner Pipe LLC*, 564 S.W.3d 167, 180 (Tex. App.—Houston [1st Dist.] 2018, no pet.). "A party raising an affirmative defense in opposition to a summary judgment motion must either (1) present a disputed fact issue on the opposing party's failure to satisfy its own summary judgment burden of proof or (2) establish the existence of a fact issue on each element of his affirmative defense." *Id.*

## II.  2905 Fannin conclusively established its breach of contract claim, and appellants did not raise a genuine question of material fact.

In its motion for summary judgment, 2905 Fannin argued that appellants defaulted on payments due August 12, 2023 "under the Settlement Agreement and resulting Note One and Note Two Modification Agreements." To demonstrate its entitlement to summary judgment, 2905 Fannin was required to produce evidence that conclusively demonstrated each essential element of a breach of contract claim, namely: (1) the existence of a valid contract between the plaintiff and the defendant; (2) the plaintiff's performance or tendered performance; (3) the defendant's breach of the contract; and (4) the plaintiff's damages as a result of the breach. *See Prime Prods., Inc. v. S.S.I. Plastics, Inc.*, 97 S.W.3d 631, 636 (Tex. App.—Houston [1st Dist.] 2002, pet. denied).

2905 Fannin's summary-judgment evidence included the Settlement Agreement and the second and third lien modification renewal, modification, and extension agreements, which 2905 Fannin referred to as the "Note One and Note Two Modification Agreements." Appellants did not dispute the existence and validity of these agreements. Thus, the first essential element of a breach of contract claim—the existence of a valid contract—is conclusively established. *See Prime Prods.*, 97 S.W.3d at 636.

In both the second and third lien modification, renewal, and extension agreements, 2905 Fannin agreed to capitalize the existing debt, stop interest from accruing at 18.00% (the "Default Interest Rate") as of January 12, 2023, fix the annual, pre-default interest rate at 8.00%, and extend the maturity date to December 31, 2025. As 2905 Fannin's suit is based on the failure to make scheduled payments based on this formula, we conclude that 2905 Fannin tendered performance under the contracts, establishing the second essential element of its breach of contract claim. *See id.*

2905 Fannin's summary-judgment evidence included an affidavit from Eric Schneider, an authorized representative of 2905 Fannin. He stated that appellants breached the contract, which he specified included the settlement agreement and the two modification, extension, and renewal agreements, "by failing to pay the payments as they came due starting on August 12, 2023." This conclusively

11

establishes the third essential element of a breach of contract claim, the appellants' breach. *See id.* In addition, Schneider explained that by entering into the settlement agreement and the two modification, extension, and renewal agreements, 2905 Fannin gave up its right to foreclose at that time, extended the maturity date, lowered the interest rate in exchange for appellants' promise to pay in the future. He stated that, as of September 25, 2023, the total amount on Note One was $600,464.40 and Note Two was $297,022.33. This conclusively establishes the final element of breach of contract, 2905 Fannin's damages. *See id.*

In response to the summary-judgment motion, the appellants provided no evidence that contradicted 2905 Fannin's proof. Thus, the appellants failed to raise a genuine question of material fact on the essential elements of breach of contract. Rather than showing a genuine issue of material fact, appellants argued that res judicata barred the claim based on foreclosure and prior material breach excused their failure to perform by paying scheduled amounts set forth in the modification, renewal, and extension agreements.

"It is a fundamental principle of contract law that when one party to a contract commits a material breach of that contract, the other party is discharged or excused from further performance." *Mustang Pipeline Co., Inc. v. Driver Pipeline Co., Inc.*, 134 S.W.3d 195, 196 (Tex. 2004). "The contention that a party to a contract is excused from performance because of a prior material breach by the

other contracting party is an affirmative defense that must be affirmatively pleaded." *Blackstone Med., Inc. v. Phoenix Surgicals, L.L.C.*, 470 S.W.3d 636, 646 (Tex. App.—Dallas 2015, no pet.); *see, e.g.*, *ACS Invs., Inc. v. McLaughlin*, 943 S.W.2d 426, 431 (Tex. 1997) ("A party must plead and prove the affirmative defense of legal justification or excuse.").

The appellants did not plead prior material breach, but in their response to the motion for summary judgment, they sought leave to plead affirmative defenses of res judicata and excuse, and 2905 Fannin has responded to this argument. Whether 2905 Fannin breached first by filing suit depends on whether the parties' contract prohibited it, a question we review de novo. *Sundown Energy LP v. HJSA No. 3, Ltd. P'ship*, 622 S.W.3d 884, 888 (Tex. 2021) (courts review contract construction de novo with primary concern for giving effect to parties' intent, while considering context, and construing contracts to avoid rendering contract language meaningless). Having reviewed the relevant documents, we conclude that they do not prohibit 2905 Fannin from filing suit.

The settlement agreement included mutual releases, but the release by 2905 Fannin expressly excluded "any obligations recognized or created by this Agreement or the Second Mortgage, Third Mortgage, Second Mortgage Personal Guaranty, Third Mortgage Personal Guaranty, and/or any and all modifications, renewals, and/or re-arrangements thereof." The modification, renewal, and

extension agreements expressly provided that they did not release claims or impair rights provided by Notes One or Two, the deeds of trust, or any prior extension, renewal, or modification agreements.[7] Notes One and Two expressly reserved to the Payee [now, 2905 Fannin] all legal and equitable remedies in case of default. Both notes provide for attorney's fees if the "Payee" retains an attorney in

---

[7]    For example, the Second Lien Modification, Renewal, and Extension Agreement provided:

4.              Borrower understands and agrees that:

(a)             All covenants, agreements, stipulations, and conditions in the Second Lien Promissory Note and Second Lien Deed of Trust shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Second Lien Promissory Note and Second Lien Deed of Trust shall be diminished or released by any provisions hereof. Nor shall this Modification Agreement in any way impair, diminish, or affect any of Note Holder's rights under or remedies available under the Second Lien Promissory Note and Second Lien Deed of Trust, whether such rights or remedies arise thereunder or by operation of law. Also, this Modification Agreement does not impair in any way, any Personal Guaranty.

(c) [*sic*]       Borrower has no right of set-off or counterclaim, or any defense to the obligations of the Second Lien Promissory Note and Second Lien Deed of Trust.

(d)             Nothing in this Modification Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Second Lien Promissory Note and/or Second Lien Deed of Trust, Loan Agreement, or any prior extension, renewal, or other agreement.

The Third Lien Modification, Renewal, and Extension agreement included similar terms.

14

connection with any default or to collect, enforce, or defend the note at maturity in a lawsuit or other legal proceeding.

Having considered the contract language, we conclude that nothing in the parties' agreements prohibits 2905 Fannin from filing a breach of contract lawsuit. *See Sundown Energy*, 622 S.W.3d at 888. Rather, the parties contemplated that 2905 Fannin might file a lawsuit as a remedy for default. Accordingly, we further conclude that the appellants failed to establish a fact issue on their affirmative defense because they provided no evidence that showed the existence of a valid contract that prohibited 2905 Fannin from filing suit. *See Fortitude Energy*, 564 S.W.3d at 180.

We hold that the trial court did not err by granting summary judgment.

## Conclusion

We affirm the judgment of the trial court.



Susanna Dokupil
Justice

Panel consists of Chief Justice Adams, and Justices Morgan and Dokupil.